IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

**PAUL D. RUSSELL,**                                              Plaintiff,

vs.                                                  Case No. 2022-CV-

**CHRISTINE E. WORMUTH,** Secretary of the Army,        Defendant.

## COMPLAINT

**COMES NOW**, Paul D. Russell, by and through one of his attorneys, Peter Charles Rombold of Hoover Law Firm and for his Complaint over and against Defendant states and alleges as follows:

1a.   Plaintiff is an individual formerly residing in the State of Kansas, and County of Geary.

1b.   At the time of the events and occurrences described in this Complaint, Plaintiff resided and was employed in the State of Kansas and County of Geary where this cause of action arose.

2.   Defendant is the Secretary of the United States, Department of the Army (hereafter referred to as "Defendant") which term shall include Army Defendant's representatives and agents, including but not limited to the United States Army Department of Medical Activity (MEDDAC) officials and agents, assigned, or formally assigned to Irwin Army Community Hospital (IACH) at Fort Riley, Kansas.

3.   On March 10, 2022, Defendant took final action on Plaintiff's Complaint filed with the Equal Employment Opportunity Commission in Case No. 560-2020-0096X and denied

Plaintiff's complaint of unlawful, discriminatory and retaliatory employment practices. A copy of such determination is attached as Exhibit A.

4. This Court possesses jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1343 and 1346.

5a. Plaintiff hereby charges Defendant with discriminatory and unlawful employment practices, consisting of but not limited to Defendant's disparate and adverse treatment of Plaintiff due to his gender and the subjection of Plaintiff to a hostile and intimidating work environment due to Plaintiff's gender, contrary to 42 U.S.C. §2000e-2.

5b. Plaintiff further charges Defendant with retaliatory and unlawful employment practices, consisting of but not limited to Defendant's indefinite detail of Plaintiff out of his logistics position because of Plaintiff's prior protected activity, contrary to 42 U.S.C. §2000e-3.

6a. Plaintiff is a career civil servant with over 30 years of federal service, both as an active duty member of the U.S. Army and as a federal civil servant.

6b. Until November 10, 2018, Plaintiff served the United States Army, Medical Department Activity, Irwin Army Community Hospital (IACH) at Fort Riley, Kansas as the Acting Chief of IACH's Logistics Division.

6c. When these events and occurrences which gave rise to this cause of action commenced, Plaintiff's position title was Supervisory Logistics Management Specialist serving as the Chief, Logistics (TEMP promotion since MAY 2017).

7. On November 11, 2018 Major Tamara Tran became the Chief of IACH's Logistics Division and Plaintiff's first level supervisor.

8a.     In the same month, on November 27, 2018, MAJ Tran directed Plaintiff on November to stop using the word Chief when referring to his position, and instead describe Plaintiff's postion as Readiness Manager.

8b.     According to IACH's Table of Distributions and Allowances (TDA) however, Plaintiff's position was correctly and officially classified as Chief of Readiness. No other person had been hired into that position while Plaintiff encumbered that position.

8c.     Because of MAJ Tran's animus against Plaintiff due to his gender, MAJ Tran prohibited Plaintiff from using his correct position title in order to undermine Plaintiff's position and stature within IACH's Logistics Division and the Hospital generally.

8d.     MAJ Tran intended thereby to signify to Plaintiff and to other employees at IACH, that no matter what the TDA provided, that she would not treat Plaintiff as a chief within the Logistics Division and that Plaintiff had no apparent authority to support Hospital operations except that meted out and allowed by MAJ Tran.

9.      Prior to MAJ Tran's mandate to Plaintiff regarding the title of his position, MAJ Tran made it her manifest policy to treat male and female employees differently and without regard to the duties of their position. This policy was made manifest by her mistreatment of Plaintiff and other male employees within IACH's Logistics Division including but not limited to the following actions:

10a.    On November 6, 2018, MAJ Tran requested all IACH Logistics supervisors to a leadership meeting, all of whom were males. Among other things, MAJ Tran advised those employees in attendance she was shocked that all IACH Logistics supervisors were men, implying this was due to discrimination, as opposed to turnover or another non-discriminatory reason.

**COMPLAINT**                                                              4

10b.    MAJ Tran also asked for another leadership meeting the same day but invited two (2) non-supervisory female workers to attend that meeting as well. At this subsequent meeting, MAJ Tran stated that any employee whom she supervised, would be expected to complete professional reading. MAJ Tran then distributed one book to the male employees and another book to the female employees.

11a.    MAJ Tran's differential treatment of female employees became more manifest as she carried out her duties and was evidenced by her consistently more favorable treatment of non-supervisory female employees whom she invited to supervisor's meetings, as if they were supervisors, while she disregarded and ignored Plaintiff, who besides MAJ Tran, was the only other chief within the Logistics Division.

11b.    Plaintiff also received reports from other male IACH supervisors that MAJ Tran seemed to also ignore and disregard them due to their gender.

12.    Similarly, MAJ Tran failed to communicate with Plaintiff as she assumed responsibility from the Plaintiff, who until MAJ Tran's arrival, was the Acting Chief of Logistics and had been the only Chief in the Logistics Division. There was no transitional communication between Plaintiff and MAJ Tran, whose policy was to ignore Plaintiff.

13a.    As MAJ Tran's tenure in the position lengthened, MAJ Tran evinced a pattern and practice of treating male employees in IACH's Logistics division differently from female employees, including but not limited to the following actions:

13b.    MAJ Tran required male employees, who wished to meet with her, to schedule an appointment. Female employees however could and did meet with MAJ Tran on an open-door basis without an appointment.

13c.   MAJ Tran often indicated to male employees, who asked her questions, that they should not have had a question in the first place if they were competent, while female employees who asked questions were provided with answers and support.

13d.   When addressing male employees whom she did not supervise, MAJ Tran appeared to be intimidated and would attempt to compensate by controlling the conversation. On the other hand, MAJ Tran belittled those male employees who were under her supervision.

14.   Plaintiff and other IACH male employees reported MAJ Tran's differential treatment in IACH's Logistics Division to IACH's chain of command but were afforded no relief. MAJ Tran's disparate treatment continued unchecked and became progressively worse over time.

15a.   In the following year, IACH Management did provide at least a procedural remedy when it ordered an EEO sensing study to be conducted within the Logistics Division in February of 2019.

15b.   Plaintiff has been informed and does believe, that this EEO sensing session confirmed MAJ Tran discriminated against male employees and favored female employees within IACH's Logistics Division according to their gender.

16a.   MAJ Tran's behavior continued unabated nonetheless. MAJ Tran stated at administrative and staff meetings that Plaintiff was incompetent, and incorrectly claimed that Plaintiff was no longer an IACH Logistics chief.

16b.   MAJ Tran further stated that while Plaintiff was in charge of IACH's Logistics Division, he made poor decisions, and illegal decisions.

16c.   In addition to her statements at such meetings, MAJ Tran caused a 15-6 Investigation to be commenced against Plaintiff into multiple accusations she made against Plaintiff.

16d. Despite initiating a 15-6 investigation and multiple, adverse comments she made about the Plaintiff at administrative and staff meetings, not once did MAJ Tran ask Plaintiff about any of the allegations made against Plaintiff in the 15-6 report, nor directly question his competence despite frequently making such statements to others at IACH administrative and staff meetings.

17. MAJ Tran's allegations were not substantiated by the 15-6 Investigation.

18a. One exception to MAJ Tran's policy of circumventing Plaintiff was one (1) email she sent to Plaintiff on December 7, 2018 as well as other IACH Logistics employees suggesting that an inquiry she received about a overdue bill from an overhead door company, was about an unpaid bill for a door ordered by Plaintiff for IACH. MAJ Tran requested that Plaintiff "close it out" since it was incurred "on his watch."

18b. The bill described in ¶ 18a was for an expense incurred by a township board, and unrelated to IACH. Although MAJ Tran did include Plaintiff on her December 7, 2018, email, the primary addressee was an IACH Logistics employee and other IACH employees. MAJ Tran included these other IACH employees on her December 7, 2018, in order to embarrass Plaintiff by suggesting that Plaintiff had failed or refused to pay an IACH bill he had incurred.

19a. In the following year, on February 8, 2019, MAJ Tran proposed to her next level supervisor, a LTC Sexton, that a female, non-supervisory IACH employee be placed in charge of IACH's Logistic Division (acting Chief) while MAJ Tran was on maternity leave.

19b. When she made this proposal, MAJ Tran knew or should have known that it was expressly provided by Plaintiff's position description that he was required to serve as Acting Chief of the Logistics Division in the absence or disability of the Chief of Logistics.

19c. Also when she made this proposal, MAJ Tran knew or should have known there were four (4) other IACH Logistics staff members, besides Plaintiff, whom because of their previous training, experience and job duties, were more qualified to serve as Acting Chief than the female, non-supervisory employee proposed by MAJ Tran. All of these employees however were male employees.

19d. MAJ Tran's proposal described in ¶19a above was another instance of her plan to undermine the authority and responsibilities of the Plaintiff due to his gender and to improve the prospects for MAJ Tran's female protege or proteges to be selected for Plaintiff's position.

20a. On March 18, 2019 in another attempt by MAJ Tran to undercut Plaintiff, MAJ Tran sent an email to an IACH Logistics employee, with extra copies to other IACH employees, requesting that Plaintiff's name be removed from IACH Logistics Division leadership emails. since Plaintiff was only a readiness manager not a deputy chief.

20b. This request by MAJ Tran was factually incorrect, and was attributable, like other actions she took against Complaint and other male IACH employees, to MAJ Tran's desire to embarass Plaintiff and undercut Plaintiff's authority in the Logisitics division because of his gender.

21a. On March 26, 2019 Plaintiff was detailed out of his position, purportedly due to the pending 15-6 investigation.

21b. Despite the fact that the 15-6 investigation did not corroborate MAJ Tran's allegations, Plaintiff was not returned to his former duties once the 15-6 investigation was completed.

21c.  Plaintiff was not returned to his position, because Plaintiff filed a complaint of discrimination with Ft. Riley's EEO office after being informed he would be detailed out of his position.

21d.  Because of the EEO sensing session, Defendant knew and had reason to know that MAJ Tran had intentionally discriminated against Plaintiff and other male employees of IACH, due to their gender but responded to this discriminatory conduct by continuing to detail Plaintiff out of his position even after the 15-6 investigation had been completed.

21e.  MAJ Tran on the other hand, was not affected by Plaintiff's EEO complaint, and remained in her position despite the results of the EEO sensing session, the 15-6 investigation and the corroboration of Plaintiff's discrimination complaint.

22.  Plaintiff and other male employees of IACH's Logistics Division were continually subjected to a hostile and intimidating work environment due to their gender by MAJ Tran.

23.  Due to their gender, Plaintiff and other male employees of IACH's Logistic Division were discriminated against and treated differently and adversely when compared to female employees.

24.  In addition to discriminating against Plaintiff and subjecting him to a hostile work environment as described above, Defendant retaliated against Plaintiff for engaging in the protected activity by continuing to detail Plaintiff out of his position, even though the 15-6 investigation had been completed.

25a.  Defendant knew and had reason to know because of its EEO sensing session and Plaintiff's EEO Complaint of MAJ Tran's animus against Plaintiff due to his gender but ratified

and allowed MAJ Tran to continue to discriminate against Plaintiff and other male, IACH employees.

25b. Also, Defendant knew that MAJ Trans was subjecting Plaintiff and other male employees in IACH's Logistics Division to a hostile work environment due to their gender but allowed MAJ Tran to maintain this environment while she occupied the Chief of Logistics position.

25c. Defendant retaliated against Plaintiff due to his filing of a formal complaint of discrimination by continuing his detail to a non-logistics position on an indefinite basis, materially interfering with Plaintiff's logistics career.

26. As a direct result of the continued hostile work environment and the discriminatory and retaliatory actions maintained by Defendant against Plaintiff, Plaintiff suffered damages, lost income and benefits in an amount exceeding $75,000 and continues to suffer emotional pain and suffering arising out of Plaintiff's separation from his wife and family due to his constructive termination at IACH and his acceptance of employment elsewhere within MEDDAC.

**WHEREFORE**, Plaintiff prays the Court issue its judgment and decree the Defendant has committed discriminatory and unlawful employment practices against Plaintiff; that Defendant has created and maintained a hostile and intimidating work environment for Plaintiff, that the Court award Plaintiff compensatory damages in an amount exceeding $75,000; for an Order requiring comprehensive equal employment opportunity training at Irwin Army Community Hospital, and Ft. Riley, Kansas and such other equitable relief necessary to prevent Plaintiff and others similarly situated, from being subjected to discrimination and

retaliation, and for his attorney fees and costs incurred herein, and for such other and further relief which the Court deems just and equitable.

RESPECTFULLY SUBMITTED,

/s/ Peter Charles Rombold
Attorney for Plaintiff
Ks. S. Ct. No. 11539
HOOVER, SCHERMERHORN,
EDWARDS, PINAIRE & ROMBOLD
811 North Washington Street
Junction City, KS  66441
Attorneys for Plaintiff
(785) 238-3126
(785) 238-1717 (fax)
E-mail: rombold@hooverlawfirm.com

**Demand for Trial by Jury**

Comes Now Plaintiff, by and through one of her attorneys, Peter Charles Rombold, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold and on behalf of Plaintiff hereby demand trial by jury on the Complaint in Kansas City, Kansas.

/s/   Peter Charles Rombold, #11539
HOOVER, SCHERMERHORN,
EDWARDS, PINAIRE & ROMBOLD
