## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Paul D. Russell,**

                    **Plaintiff,**

**v.**                                                    **Case No. 22-4035-DDC**


**Christine E. Wormuth,**
**Secretary of the Army,**

                    **Defendant.**

### <u>MEMORANDUM & ORDER</u>

Plaintiff Paul D. Russell filed suit against Christine E. Wormuth, Secretary of the United States Army, alleging claims of gender-based disparate treatment, gender-based hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendant's motion to dismiss for failure to exhaust administrative remedies and failure state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). As explained below, the motion is granted in part and denied in part.


***Standard***

The court will grant a motion to dismiss for failure to state a claim when a plaintiff's factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See id.* at

555.  The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## Background

Consistent with the governing standard, the court accepts as true the following well-pleaded facts alleged in plaintiff's complaint.  Plaintiff was employed by the United States Army and worked at the Irwin Army Community Hospital ("IACH") at Fort Riley, Kansas.  During the pertinent time period, plaintiff's position at IACH was Chief of Readiness.  Plaintiff also served as the Acting Chief of IACH's Logistics Division until November 10, 2018.  On November 11, 2018, Major Tamara Tran (hereinafter "MAJ Tran") became the Chief of IACH's Logistics Division and plaintiff's first-level supervisor.  Plaintiff asserts that MAJ Tran failed to communicate with him during MAJ Tran's transition to Chief of the Logistics Division.  Despite the fact that plaintiff was the Chief of Readiness and the only other "Chief" in the Logistics Division, MAJ Tran disregarded and ignored plaintiff while treating non-supervisory female employees more favorably.

In early November 2018, MAJ Tran held a meeting with all IACH Logistics supervisors.  MAJ Tran advised those supervisors during the meeting that she was "shocked" that all of the supervisors were male.  Plaintiff alleges that MAJ Tran implied that the lack of women in supervisory Logistics positions resulted from discrimination.  Later that day, MAJ Tran held another leadership meeting, but invited two non-supervisory female employees to attend.  MAJ

Tran announced at that meeting that her direct reports were required to complete a professional reading requirement.  She distributed one book title to the male employees, but distributed a different book title to the female employees.

According to plaintiff, MAJ Tran consistently treated female employees in the Logistics Division more favorably than plaintiff and other male employees.  MAJ Tran required male employees to schedule an appointment with her if they desired to meet.  Female employees, however, could meet with MAJ Tran on an open-door basis without scheduling an appointment.  MAJ Tran suggested that male employees who asked work-related questions were incompetent, but provided support and answers to female employees who asked such questions.  She belittled male employees whom she supervised.

At the end of November 2018, MAJ Tran directed plaintiff to stop using the word "Chief" when referring to his position and to use the title "Readiness Manager" instead of "Chief of Readiness."  Plaintiff asserts that this was done to undermine plaintiff's position and his stature within the Logistics Division.  In all work-related matters, MAJ Tran refused to treat plaintiff as a Chief in the Logistics Division and denied plaintiff authority and support commensurate with his position and responsibilities.  In December 2018, MAJ Tran sent an email to plaintiff in which she suggested that plaintiff had failed or refused to pay an invoice and directed him to resolve the issue immediately.  MAJ Tran copied other IACH employees on the email in an effort to embarrass and undermine plaintiff.

In early 2019, IACH management conducted an EEO "sensing study" in the Logistics Division.  Plaintiff believes that this study confirmed that MAJ Tran discriminated against male employees and favored female employees.  Despite the study's conclusions, MAJ Tran's conduct

continued, and she regularly stated at staff meetings that plaintiff was incompetent and claimed that plaintiff was no longer serving as a Chief in the division.  MAJ Tran further stated that plaintiff made poor decisions when he served as the Acting Chief.

In early February 2019, MAJ Tran was preparing to take maternity leave and proposed to her next-level supervisor that a female, non-supervisory IACH employee serve as Acting Chief of the Logistics Division in her absence.  MAJ Tran made this recommendation despite knowing that plaintiff's written job description expressly provided that he was required to serve as Acting Chief in the absence or disability of the Chief.  Moreover, there were at least four other IACH staff members who were more qualified to serve as Acting Chief than the female employee proposed by MAJ Tran.  MAJ Tran, however, did not recommend any of these employees based on the gender of those employees.  On March 18, 2019, MAJ Tran sent an email to several IACH Logistics management employees asking them to remove plaintiff from all leadership emails.

In late March 2019, MAJ Tran requested an investigation of plaintiff under the provisions of Army Regulation (AR) 15–6. Defendant removed plaintiff from his position during the pendency of that investigation and placed him in a non-logistics position.  On April 11, 2019, plaintiff made contact with an EEO counselor and he filed an administrative complaint of discrimination on May 13, 2019.   Despite the fact that the AR 15-6 investigation did not substantiate or otherwise corroborate MAJ Tran's allegations of misconduct by plaintiff, defendant did not return plaintiff to his position after the investigation was completed.  Plaintiff asserts that defendant's refusal to return him to that position was in retaliation for plaintiff's filing of the discrimination complaint and that defendant's refusal to return him to his position and

continuing his detail to a non-logistics position has materially interfered with plaintiff's career in logistics.

In March 2022, defendant issued a final decision denying plaintiff's complaint of discrimination.  Thereafter, plaintiff timely filed this lawsuit.

## Discussion

In his complaint, plaintiff explicitly asserts a claim for gender-based hostile work environment and retaliation.  In contrast, it's unclear whether plaintiff also intends to assert discrete gender-based disparate claims based on the separate events set forth in his complaint, such as: (1) MAJ Tran's recommendation that a non-supervisory female employee should serve as Acting Chief in MAJ Tran's absence; and (2) MAJ Tran's decision to assign different professional books to male and female employees.  It is similarly unclear whether plaintiff intends to assert a claim for constructive discharge.[1]  In its motion to dismiss, defendant asserts that the court must dismiss plaintiff's retaliation claim and any claim for constructive discharge for failure to exhaust administrative remedies because plaintiff did not include those claims in his administrative complaint.  Defendant further asserts that, to the extent plaintiff intends to set forth discrete disparate treatment claims, the court must dismiss all but one of those claims for failure to timely exhaust administrative remedies because the claims are based on events that occurred

---

[1] While neither party mentions it in its submissions, plaintiff's complaint contains at least one reference to MAJ Tran engaging in a "pattern and practice" of discrimination. Individual plaintiffs cannot bring pattern-or-practice claims under Title VII. *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 633 (10th Cir. 2012).  The court, then, does not read the complaint as attempting to set forth a separate claim based on plaintiff's "pattern and practice" allegations.

more than 45 days prior to plaintiff's initial contact with an EEO counselor.  Finally, defendant argues that the court must dismiss the remaining discrete disparate treatment claim and plaintiff's hostile work environment claim for failure to state a plausible claim for relief.

**Failure to Exhaust Administrative Remedies**

"Federal employees alleging discrimination or retaliation prohibited by Title VII or the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (citation omitted).  Among other requirements, before a federal employee can sue his or her employer for discrimination or retaliation, the employee must "initiate contact" with an Equal Employment Opportunity counselor at his or her agency "within 45 days of the date of the matter alleged to be discriminatory."  *Id*. (citing *Green v. Brennan*,578 U.S. 547, 553 (2016) (quoting 29 C.F.R. § 1614.105(a)(1))). If the matter is not resolved informally, the counselor provides a written notice to the federal employee of the right to file a formal EEO complaint for a decision by an ALJ.  29 C.F.R. § 1614.105(d).  Thereafter, the federal employee may file a lawsuit in federal court within 90 days of receiving notice of final agency action on the formal complaint by the ALJ, or 180 days from the filing of the complaint if no final action was taken by that time.  29 C.F.R. § 1614.407(a)-(b).  This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but, instead, is a claims-processing rule that the employer may raise as an affirmative defense. *Hickey*, 969 F.3d at 1118.

In his May 13, 2019 administrative EEO complaint—the only one he filed—plaintiff marked the box indicating that his employer had discriminated against him based on his sex.[2] He did not mark any other boxes, including the "reprisal" box.   In the box asking for an explanation of "when and how" he was discriminated against, plaintiff delineated a total of seven specific allegations of discrimination.   These allegations included, as numbered by plaintiff but summarized by the court:

    1.a.    MAJ Tran discriminated against plaintiff in her March 18, 2019 email asking that plaintiff be removed from all future leadership emails;

    1.b.    MAJ Tran discriminated against plaintiff in her December 7, 2018 email in which she questioned plaintiff about his failure to pay an outstanding invoice;

    1.c.    MAJ Tran discriminated against plaintiff in her November 27, 2018 email asking plaintiff to stop using the word "Chief" when referring to his position and to use the title "Readiness Manager" instead;

    2.    MAJ Tran discriminated against plaintiff in meetings when she stated that plaintiff was "incompetent" and that he was "doing things illegally";

    3.    MAJ Tran expressed concern during the November 2018 meeting that there were no female supervisors in Logistics and suggested that the absence of female supervisors was due to discriminatory hiring practices;

    4.    MAJ Tran attempted to place a non-supervisory female staff member in charge when she was preparing for maternity leave; and

    5.    MAJ Tran assigned different book titles to male and female employees for purposes of the professional reading requirement.

---

[2] Defendant has attached plaintiff's EEO complaint to its motion to dismiss.   Because that document is expressly referenced in the complaint, is central to plaintiff's claim, and neither party disputes its authenticity, the court may properly consider it without converting the motion to dismiss to one for summary judgment.   *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

In its final decision, the agency accepted for investigation the seven discrete claims of discrimination as well as a hostile work environment claim based on the totality of the circumstances.  Because the final agency decision is attached to and referenced in plaintiff's complaint, the court properly may consider that document when resolving the motion to dismiss. *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1229 (10th Cir. 2022) ("[W]hen a plaintiff attaches a written document to his complaint as an exhibit, we consider it part of the complaint for all purposes, including in a Rule 12(b)(6) dismissal.") (citations omitted).

In its motion, defendant asserts that the court must dismiss plaintiff's retaliation claim and any constructive discharge claim because those claims are not the subject of any administrative complaint of discrimination filed by plaintiff.  "[A] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. United Parcel Serv., Inc*., 502 F.3d 1176, 1186 (10th Cir. 2007). To exhaust a federal claim, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id*.; *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (each discrete claim must be the subject of a charge).

As noted earlier, plaintiff did not mark the "reprisal" box for purposes of asserting a retaliation claim.  *Jones v. U.P.S., Inc.,* 502 F.3d 1176, 1186 (10th Cir. 2007) ("The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box").  Moreover, here, it's apparent on the face of the administrative

complaint that plaintiff did not assert any facts suggesting retaliation or any alleged constructive discharge.  The administrative complaint contains no facts concerning defendant's refusal to place plaintiff back in Logistics after the AR 15-6 investigation was completed or any facts concerning that investigation or plaintiff's temporary removal from his position during the pendency of the investigation.  He did not file a subsequent complaint asserting a retaliation claim or a constructive discharge claim.  He does not assert any facts connecting MAJ Tran to any decision to remove him from his position during the investigation or any refusal to return him to that position.  The agency's final decision does not suggest any investigation into retaliation or constructive discharge and does not reference any facts pertinent to those claims.

Nonetheless, plaintiff contends that his retaliation and constructive discharge claims are not subject to dismissal because he specifically discussed these claims and the facts underlying these claims with the agency investigator during the course of the investigation of plaintiff's EEO complaint.  In support of this argument, plaintiff submits the record collected in connection with the investigation of his administrative complaint, including a detailed declaration signed by plaintiff, and the written findings from the AR 15-6 investigation.[3]  None of these documents support the conclusion that plaintiff articulated a retaliation claim or a constructive discharge claim—or articulated the facts underlying those claims—in connection with the investigation of

---

[3] Defendant, in its reply, asks the court to exclude these documents from its consideration because the documents were not referenced in plaintiff's complaint and are not central to plaintiff's claims. Plaintiff, in turn, has moved the court for leave to file a surreply or for oral argument to address that argument (doc. 26).  Because dismissal of plaintiff's retaliation and constructive discharge claims is appropriate regardless of the contents of these documents, there is no prejudice to defendant from the court's consideration of the documents and there is no need for a surreply on this issue. Plaintiff's motion is denied.

his administrative complaint of discrimination.  More significantly, none of these documents support the conclusion that the agency actually investigated or accepted for investigation a claim for retaliation or constructive discharge.  On one occasion in his declaration, plaintiff mentions that he was "detailed to Quality and Safety pending the outcome of a 15-6 investigation" after he returned from a one-week leave of absence.  But that statement was made in response to a specific question about whether and when plaintiff complained about MAJ Tran's March 18, 2019 request to remove plaintiff from all leadership emails:

> Q: Did you report the actions, behavior, and or conduct identified in [Incident 7] to the management official/supervisor involved, or any other management official, supervisor, or employee? If so, please identify who you reported it to, when you reported it, what was discussed and what action, if any, was taken by management in response:
>
> R: Yes, on 26 MAR when I returned from a week's leave (19-25 MAR) when I was being informed that I was being detailed to Quality and Safety pending the outcome of a 15-6 investigation.  I also used this as the most recent incident to file this formal EEO complaint.

Plaintiff's statement about his detail to Quality and Safety did not suggest that the detail was retaliatory, that the detail was permanent, or even that MAJ Tran was responsible for plaintiff's assignment to Quality and Safety.  In fact, when he signed the declaration in September 2019, plaintiff identified his "current" job as Chief of Readiness.  And in the agency's final decision in March 2022, the investigator stated that plaintiff had served in the same job ("Logistics Management Specialist") from November 2018 through the "present."  In short, nothing in the documents submitted by plaintiff or the final agency decision attached to his complaint suggests that the agency knew that plaintiff was detailed to a different position (let alone that the detail was retaliatory) or that plaintiff was claiming that defendant had constructively discharged him.  The

10

court grants defendant's motion to dismiss these claims for failure to exhaust administrative remedies.[4]

The court turns now to the seven discrete claims that are set forth in plaintiff's administrative complaint of discrimination. As defendant highlights, the only discrete act set forth in the discrimination complaint that occurred within 45 days of plaintiff's initial contact with an EEO counselor on April 11, 2019 is the act described in Paragraph 1.a.—MAJ Tran's March 18, 2019 email asking to remove plaintiff from future leadership emails. According to defendant, then, the court must dismiss each of the remaining six discrete acts of discrimination for failure to timely exhaust those claims. Plaintiff does not address this argument. Rather, plaintiff points out that only one act comprising his hostile work environment claim must have occurred within the 45-day filing window. This statement does not address defendant's argument, however. Defendant has not moved to dismiss plaintiff's hostile work environment claim based on an alleged failure to exhaust administrative remedies. This aspect of defendant's motion aims solely at plaintiff's discrete claims of discrimination. And on this point, defendant is correct—plaintiff's failure to file his administrative complaint of discrimination within 45 days of the acts described in paragraph 1.b. through paragraph 5 of his administrative complaint requires the court to dismiss those claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 101–03 (2002) (each discrete incident of discrimination or retaliation constitutes separate "unlawful employment

---

[4] Defendant also asserts that plaintiff cannot maintain discrete claims of discrimination based on numerous other events identified in plaintiff's complaint in this lawsuit but not set forth in the administrative complaint of discrimination (*e.g.*, MAJ Tran's failure to communicate with plaintiff and her requirement that male employees schedule appointments for meetings). To the extent plaintiff intended these allegations to constitute separate discrete acts of discrimination, they are dismissed for failure to exhaust.

practice" for which administrative remedies must be exhausted); *accord Walker v. Wormuth*, No. 22-CV-2190-JAR-ADM, 2023 WL 2428903, at *5 (D. Kan. Mar. 9, 2023) (dismissing discrete discrimination and retaliation claims for failure to timely exhaust where claims were made past 45-day deadline).  The court grants the motion to dismiss with respect to the discrete claims identified in paragraph 1.b through paragraph 5 of plaintiff's administrative complaint.

**Failure to State a Plausible Claim for Relief**

In light of the court's rulings on the exhaustion issue, the only remaining claim arising from a discrete act of alleged discrimination is plaintiff's claim that MAJ Tran sent an email in March 2019 asking the management team to remove plaintiff from future leadership emails. Defendant moves to dismiss this claim on the grounds that plaintiff has not plausibly alleged that the email constitutes an adverse employment action.  *See Khalik v. United Air Lines, Inc*., 671 F.3d 1188, 1192-93 (10th Cir. 2012) (to avoid Rule 12(b)(6) dismissal of Title VII disparate treatment claim based on discrete act, plaintiff must plausibly allege adverse employment action). An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  The Tenth Circuit defines the concept liberally, "examining the unique factors relevant to the situation at hand." *Sanchez v. Denver Pub. Schs*., 164 F.3d 527, 531 (10th Cir. 1998).  While an adverse employment action might include an act that carries "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects," *Annett v. Univ.*

12

*of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004), the concept does not include "a mere inconvenience or an alteration of job responsibilities." *Sanchez*, 164 F.3d at 532.

Notably, plaintiff does not address this claim in any respect in his response to the motion to dismiss and, thus, he offers no authority supporting the conclusion that the email sent by MAJ Tran plausibly could constitute an adverse employment action. His complaint is also devoid of well-pleaded facts that might support this conclusion. He alleges only that the email was sent with the intent to embarrass plaintiff and to undercut his authority. He does not allege that, in fact, he was humiliated by the email or that the email damaged his reputation. He does not allege that the email was placed in his personnel file. The complaint does not contain any allegations about the aftermath of the email or any other details from which the court might conclude that the email plausibly rises to the level of an adverse employment. The court thus must dismiss this claim. *See Sotunde v. Safeway, Inc*., 716 Fed. Appx. 758, 767 (10th Cir. 2017) (email from supervisor questioning plaintiff's work amounted to a "snub" or "slight" and did not rise to level of materially adverse action even under more liberal retaliation standard) (collecting cases); *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas*, 572 F. Supp. 3d 1081, 1097 (D. Kan. 2021) (email reprimand was not materially adverse for purposes of stating retaliation claim in the absence of allegation that email had direct bearing on future employment).

This conclusion leaves only plaintiff's claim for gender-based hostile work environment. To state a plausible Title VII claim based on sexual harassment, plaintiff must allege facts supporting a plausible finding or inference that he was discriminated against because of his sex and that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his employment. *Throupe v. University of Denver*, 988 F.3d 1243, 1249 (10th Cir.

13

2021); *Morman v. Campbell County Mem. Hosp.*, 632 Fed. Appx. 927 (10th Cir. 2015) (Circuit evaluates plausibility of claim under Rule 12(b)(6) standard by considering prima face case of discrimination that plaintiff would need to prove in court).  In its motion, defendant asserts that the court must dismiss this claim because plaintiff has failed to allege plausibly pervasive discrimination based on sex.

The court rejects this argument.  Significantly, defendant analyzes plaintiff's hostile work environment claim through the limited lens of the facts set forth in plaintiff's EEO complaint. Defendant ignores numerous allegations that plaintiff has set forth in his complaint here but that were not included in the administrative complaint, including allegations concerning plaintiff's removal from his Logistics position, MAJ Tran's request for an AR 15-6 investigation, the EEO sensing study and the results of that study, MAJ Tran's failure to communicate with plaintiff, and MAJ's less favorable treatment of male employees (by meeting with male employees by appointment, by ignoring male employees, and by failing to provide answers to work-related questions asked by male employees).  These allegations arguably provide additional factual context and support for plaintiff's claim that the court must consider when resolving whether plaintiff has stated a plausible claim for relief.

Defendant contends that the court, in analyzing plaintiff's hostile work environment claim, only may consider allegations that were set forth in the EEO complaint.  This is an inaccurate statement of the law.  In analyzing a hostile work environment claim, the court can consider not only acts set forth in the EEO complaint (even those that occurred outside the filing window) but acts that are not included in the EEO complaint, so long as those acts are part of the same hostile work environment. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)

(continuing violation doctrine permits consideration of unexhausted incidents of alleged discrimination for hostile work environment claims, as long as "an act" contributing to a hostile work environment took place within the limitations period for filing the EEOC charge); *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (*Morgan* holds that as long as "an act" contributing to a hostile work environment took place no more than 300 days before the plaintiff filed an EEOC charge, a court may consider "the complete history of acts" comprising that hostile work environment).  Here, defendant concedes that plaintiff exhausted his hostile work environment claim and that one act that contributed to that hostile work environment—MAJ Tran's March 18, 2019 email to management asking to remove plaintiff from all leadership emails—occurred within the 45-day window for initiating contact with an EEO counselor.  The court, then, may consider all incidents that are part of the same hostile work environment.  Because defendant's motion simply fails to come to grips with the totality of the circumstances alleged by plaintiff in support of his claim, the court denies this part of the motion.[5]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss (doc. 14) is granted in part and denied in part.  The motion is granted with respect to all discrete claims of discrimination and is denied with respect to plaintiff's hostile work environment

---

[5] In support of its motion to dismiss plaintiff's hostile work environment claim, defendant relies almost exclusively on cases where courts granted summary judgment to defendants after analyzing the plaintiff's evidence on a full record.  Those cases are not persuasive to the court in the context of a Rule 12(b)(6) motion to dismiss.

claim. Plaintiff's motion for permission to file response to defendant's reply or request for oral argument (doc. 26) is denied.

**IT IS SO ORDERED.**

Dated this 30th day of June, 2023, at Kansas City, Kansas.

s/Daniel D. Crabtree
DANIEL D. CRABTREE
United States District Judge
